IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SHERRY ANN WILL | ) | Civil No.: 3:14-cv-00754-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Merrill Schneider
Schneider, Kerr & Gibney Law Offices
P.O. Box 14490
Portland, OR 97293

      Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Ronald K. Silver, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Kathryn A. Miller
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Sherry Ann Will brings this action pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 404.984 seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

For the reasons that follow, the Commissioner's decision should be reversed and the action remanded for further proceedings.

## **Procedural Background**

Plaintiff filed applications for DIB and SSI on December 15, 2010, alleging disability beginning January 1, 2010.

Plaintiff's claims were denied initially on April 6, 2011 and upon reconsideration on July 7, 2011. She timely requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Rudolph Murgo on October 30, 2012. Plaintiff and Gary Geske, a Vocational Expert ("VE"), testified at the hearing.

In a decision filed on November 9, 2012, ALJ Murgo found Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on March 4, 2014, when the Appeals Council denied Plaintiff's request for review.[1] Plaintiff now appeals to this Court for review of the Commissioner's decision.

//
//
//
//

---

[1] The Court notes Plaintiff submitted supplemental evidence to the Appeals Council which, as discussed at length below, was not made part of the administrative record.

FINDINGS AND RECOMMENDATION - 2

**Background**

Plaintiff was born in 1947 and was 42 years old on her alleged onset date. Plaintiff obtained a GED and has past relevant work as a cashier, customer service order clerk, meat processor, stock clerk, and hotel housekeeper. Plaintiff last sought work in 2010 or 2011.

Plaintiff alleges disability due to anxiety, depression, and degenerative disc disease, and osteoarthritis.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One.</u> The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

<u>Step Two.</u> The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that

meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**The ALJ's Decision**

At the first step of the disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.

At the second step, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease; osteoarthritis; obesity; major depressive disorder, recurrent; anxiety disorder, not otherwise specified; and rule out undifferentiated somatoform disorder."

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1.

Before proceeding to the fourth step, the ALJ next assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity required to perform light work,

> except lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day; occasionally climb ladders, ropes, and stairs; frequently stoop, kneel, crouch, and crawl; frequently lift with the left upper extremity, and frequently reach overhead with the left upper extremity; must have a sit/stand option every 45 minutes; is limited to simple, routine tasks; and can only have occasional contact with the public.

In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged, but that her statement concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the assessed RFC.

At the fourth step of the disability analysis, the ALJ found Plaintiff could not perform her past relevant work.

Based on the testimony of the VE at the fifth step, the ALJ found Plaintiff could perform other jobs that existed in substantial numbers in the national economy. The ALJ cited work as an assembly worker and packaging and sorting. Based on this finding, the ALJ concluded Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## **Discussion**

Plaintiff contends the ALJ erred by failing to account for material limitations found by State agency consultants, which resulted in an erroneous RFC and hypothetical questions to the VE. Plaintiff further contends that in light of evidence submitted after the ALJ's decision issued, substantial evidence no longer supports the Commissioner's final decision such that a "sentence

FINDINGS AND RECOMMENDATION - 6

four" (of 42 U.S.C. § 405(g)) remand is necessary. Alternatively, Plaintiff argues the new evidence requires a "sentence six" remand.

## 1. Limitation Findings by State Agency Consultants

Plaintiff alleges the ALJ erred by failing to adopt certain limitations the state agency consultants identified, which lead to an invalid RFC assessment and further error at step five of the sequential evaluation process. Specifically, Plaintiff contends the ALJ failed to adopt moderate limitations in: (1) maintaining attention and concentration for long periods; (2) performing activities within a schedule and maintaining regular attendance and punctuality; and (3) completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of breaks. See Tr. 69-70. These limitations were identified by state agency consultant Thomas Clifford, Ph.D., and then affirmed by agency consultant Patricia Kraft, Ph.D.[2] Defendant contends the ALJ did not err, explaining the ALJ need not adopt limitations that are not mentioned in the consultants' reports' narrative sections; and, alternatively, any error was harmless because the consultants opined Plaintiff's non-exertional limitations did not significantly erode the occupation base.

The ALJ has an independent duty to fully and fairly develop the record. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted).  Questions of credibility and resolution of conflicts in medical testimony are reserved to the Commissioner. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (citation omitted). Where the medical evidence is

---

[2]  For clarity, the remainder of this Findings and Recommendation will allude only to Dr. Clifford, who originally authored the RFC worksheets in question. However, the Court does so while recognizing Dr. Clifford's findings and opinion were affirmed by Dr. Kraft. Thus, Dr. Clifford's findings and opinion essentially constitute the findings and opinion of two non-examining sources.

inconclusive, the ALJ must explain why "significant probative evidence has been rejected," but is not required to discuss every last piece of evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations and quotation marks omitted). However, the ALJ is required to consider as opinion evidence the findings of the state agency medical consultants, and indicate the weight accorded to the opinions. 20 C.F.R. § 416.927(f)(2); Social Security Ruling ("SSR") 96-6p, available at 1996 WL 374180, *2; see D'Attili v. Colvin, available at 2014 WL 3735403, *3 (W.D.Wash. July 28, 2014). Hypothetical questions that do not include all of the claimant's impairments render the VE's opinion of no evidentiary value. Lewis v. Apfel, 236 F.3d 503, 517-18 (9th Cir. 2001).

Dr. Clifford reviewed the record and completed a mental functional capacity assessment, in the form of a boilerplate agency worksheet, on April 6, 2011. Tr. 69. Dr. Clifford noted Plaintiff was "moderately limited" in the following areas: ability to carry out detailed instructions; maintain attention and concentration for long periods; perform activities within a schedule, including regular attendance and punctuality; and complete a normal workday and workweek without psychologically-based interruptions, and perform at a consistent pace without excessive breaks. Tr. 69-70. In response to a worksheet question requesting his assessment of sustained concentration and persistence in narrative form, Dr. Clifford opined, in part, that Plaintiff's "[f]ocus and attention would [] be impacted by her anxiety and depressive Sx [symptoms]." Tr. 70. The ALJ purported to accord Dr. Clifford's opinion "great weight," although he "further limited" Plaintiff to simple, repetitive tasks based on her "complaints involving attention and concentration." Tr. 28. The ALJ did not address limitations in attendance or need for breaks in his RFC formulation. Tr. 24.

FINDINGS AND RECOMMENDATION - 8

The Commissioner contends the ALJ did not err by omitting limitations regarding attendance and breaks, arguing the ALJ need only integrate in the RFC limitations set forth in the "narrative section" of Dr. Clifford's assessment. Def.'s Br. 4-5. Thus, continues the Commissioner, because the limitations at issue were mentioned only in the "questions" section, which is "used to help determine the individual's ability to perform sustained work," the ALJ was not required to incorporate them in the RFC. Id.; see tr. 69. In support, the Commissioner cites the mental functionality worksheet, which says, "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." Tr. 69. The Commissioner further argues the result is consistent with SSA policy, as the Program Operations Manual System ("POMS"), an internal SSA document that has "persuasive authority," instructs medical consultants that "all mental capacities and limitations must be in narrative format, and should not include severity ratings . . . such as "moderate" or "moderately severe." Def.'s Br. 5; See POMS DI 24510.060.B.4; see also, Warre ex rel E.T. IV v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

The Commissioner's argument, however, is a red herring. Even assuming only the narrative portion of the Mental RFC worksheet lists limitations the ALJ should incorporate into an RFC (assuming that, as here, the narrative opinion is accorded great weight), the ALJ still failed to include any consideration of attendance. Dr. Clifford expressly noted – in the narrative section – that, "[f]ocus and attendance would also be impacted . . . ." Tr. 70. Dr. Clifford presumably derived his opinion from his findings described above; Plaintiff is moderately limited in the ability to work within a schedule, maintain appropriate attendance and punctuality, and complete a normal workday and workweek without interruptions at a consistent pace without an unreasonable number of breaks. Tr. 69-70.

FINDINGS AND RECOMMENDATION - 9

The ALJ did not include Plaintiff's moderate attendance limitation in the RFC, nor did he include the limitation in questions to the VE. Moreover, despite the Commissioner's contention, the ALJ did not constrain his reliance on Dr. Clifford's opinion to the narrative portions of the worksheet. Rather, the ALJ adopted Dr. Clifford's non-narrative finding that Plaintiff was moderately limited in her ability to interact appropriately with the general public, which he included in the RFC and in questions to the VE. See tr. 24, 55-57, 70. Further, as Plaintiff observes, the SSA's regulations regarding residual functional capacity begin with the premise that "[the SSA] will assess your [RFC] based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545; see also SSR 96-8p, available at 1996 WL 374184, *3 (RFC is based on "all of the relevant evidence of an individual's ability to do work-related activities"). Even had the ALJ determined Dr. Clifford's finding regarding attendance was not probative, and therefore excluded from the RFC formulation, the ALJ's failure to explain why the evidence was excluded was also error. Thus, as the ALJ purported to accord Dr. Clifford's opinion great weight, it was error to omit the doctor's stated moderate limitation regarding attendance.

The Commissioner further argues any omission by the ALJ was harmless, as Dr. Clifford concluded in a different section of the worksheet that Plaintiff's "[n]on-exertional limitations do not significantly erode the occupational base," using the Medical-Vocational Rules ("the grids") as a guideline. See Def.'s Br. 6; tr. 72-3.

The Commissioner's argument lacks merit. Dr. Clifford indicated he used "the grids" as a framework in completing the RFC worksheet. Tr. 73. The grids are a matrix tool involving substantially uniform levels of impairment, created to allow uniform and efficient adjudication of claims. See 20 C.F.R. Part 404, Subpart P, App. 2; Tackett, 180 F.3d at 1101; Heckler v. Campbell 461 U.S. 458 460-62 (1983). When, as here, non-exertional limitations prevent a

claimant from performing the full range of jobs in a given category, the grids may only be used as a "framework," and the ALJ is required to determine the extent the non-exertional limitations erode the particular occupational base by soliciting VE testimony. See, e.g., Desrosiers v. Sec. of Health and Human Serv., 846 F.2d 573, 578-79 (9th Cir. 1985) (when the grids are used as a framework, the ALJ must call a VE) (citations omitted). Here, the ALJ found Plaintiff was not capable of performing the full range of light work. Tr. 30. Accordingly, the ALJ was required to call a VE to determine whether the occupational base was significantly eroded.

The Commissioner essentially argues Dr. Clifford's finding that the occupational base was not eroded is somehow dispositive of Plaintiff's ability to work. Def.'s Br. 6. The argument fails on at least two fronts. The most obvious reason is the ALJ expressly found the occupational base *was* eroded. Tr. 30 ("claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations").

Even if the ALJ had not expressly found the occupational base was eroded, the Commissioner's argument fails nonetheless. The state agency medical and psychological consultants are adjudicators at the initial and reconsideration determination levels, which is why the RFC worksheet directs consultants to determine if their findings would significantly erode a particular occupational base. See SSR 96-5p, available at 1996 WL 374183, *6; POMS DI 24515.009 B5. However, at the ALJ and Appeals Council levels of review, the state agency medical consultant findings about the nature and severity of a claimant's impairments become opinion evidence. Id. Thus, the relevance of Dr. Clifford's opinion at the ALJ level is constrained to his expert *medical* opinion. Id.

At the level of ALJ review, when using the grids as a framework, the primary authority for determining the erosion of the occupational base is the VE. See, e.g., Thomas v. Barnhart,

278 F.3d 947, 960 (9th Cir. 2002) (citing Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000)); see also SSR 83-14, available at 1983 WL 31254, *4 (in complex situations [such as those involving exertional and/or non-exertional impairments], the assistance of a vocational resource may be necessary). Dr. Clifford's opinion regarding the erosion of the occupational base is not part of his narrative RFC, and moreover, is not a medical/psychological opinion. Accordingly, it is not apposite at the ALJ and Appeals Council level of review.

However, Dr. Clifford's opinion regarding the effect of Plaintiff's psychological limitations on concentration and persistence, including his opinion Plaintiffs' "[f]ocus and attendance would also be impacted by her anxiety and depressive [symptoms]," is appropriate medical opinion evidence.[3] Tr. 69, 70 (emphasis added). The ALJ failed to evaluate the "attendance" portion of Dr. Clifford's opinion, in violation of SSA regulations. See SSR 96-6p, available at 1996 WL 374180, *4 (ALJs . . . are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions.") Psychological limitations which cause a substantial loss of ability to perform work related activities on a sustained basis (i.e. 8 hours a day, 5 days a week), will "substantially erode" any occupational base. SSR 96-9p. Thus, moderate loss of ability to sustain regular attendance would, by definition, have a substantial deleterious effect.

Because the ALJ failed to properly consider or evaluate the entirety of the state agency medical examiners' opinions, which, if credited, may have altered the outcome of this case, the error was not harmless. See, e.g. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ's hypothetical to a VE must set out all of the claimant's impairments); see also Flores v.

---

[3] The Court acknowledges Plaintiff's contentions that certain findings by Dr. Clifford which were not mentioned in his narrative should also be considered opinion evidence and incorporated into the RFC. Pl.'s Br. 6-8; Pl.'s Reply 2-3. However, the Court does not reach the issue, as the ALJ's error regarding attendance is dispositive in itself.

FINDINGS AND RECOMMENDATION - 12

Shalala, 49 F.2d 562, 570-70 (9th Cir. 1995) (ALJ may not reject significant probative evidence without explanation) (citations omitted). Remand is warranted.

II. "Sentence Four" Remand

Plaintiff argues new evidence submitted to the Appeals Council, though not incorporated into the record, requires a "sentence four" remand. The pertinent passages from the statute:

> As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). Plaintiff also cites Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012), for the proposition that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Id. at 1163. Thus, argues Plaintiff, because the Appeals Council "was presented" with new evidence, the evidence is considered part of the administrative record which this Court must review in rendering a recommendation. Pl.'s Br. 10. Accordingly, Plaintiff has attached to her opening brief Exhibits "A" and "B", which are a "Cognitive and Psychological Evaluation" of Plaintiff by Keli J. Dean, Psy.D., and a receipt of its submission to the Appeals Council.[4]

The evaluation by Dr. Dean was submitted to the Appeals Council on April 23, 2013, several months after the ALJ's November 9, 2012 decision. The Appeals Council indicated,

---

[4] Plaintiff acknowledges the Court does not have jurisdiction to review the decision of the Appeals Council. Pl.'s Br. 9.

> [w]e also looked at the medical evidence from [Dr. Dean] dated
> December 7, 2012. The [ALJ] decided your case through
> November 9, 2012. This new information is about a later time.
> Therefore, it does not affect the decision about whether you were
> disabled beginning on or before November 9, 2012.

Tr. 2. The quoted passage from the Appeals Council was located below a heading titled "What We Considered." The Appeals Council did not make Dr. Dean's report part of the administrative record; rather, it advised Plaintiff she could apply again for disability beginning after November 9, 2012. Tr. 2.

The Commissioner argues Dr. Dean's report rightly is not part of the record, and thus separate from the body of evidence the Court may evaluate in issuing a recommendation. Citing Brewes, the Commissioner contends sentence three of 42 U.S.C. § 405(g) solely authorizes the Commissioner to certify the transcript, including only new evidence the Appeals Council has considered and incorporated into the administrative record. Def.'s Br. 11. Contrary to the situation in Brewes, here the new evidence was not incorporated into the administrative record and was not certified by the Commissioner of the SSA. Thus, argues the Commissioner, the new evidence is not part of the "record as a whole" the Court may review.

Some of the language in Brewes supports Plaintiff's contention. For example, the Brewes court explicitly held, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record[.]" Brewes, 682 F.3d 1157. Further, the Appeals Council indicated it "looked at" the new evidence in the "What We Considered" section of its notice. Tr. 2. Additionally, the Brewes court invoked Tackett for the proposition that evidence "considered" by the Appeals Council must be reviewed because it is part of the record as a whole. Brewes, 682 F.3d at 1163 (citing Tackett, 180 F.3d at 1097-98). In the same paragraph, the Brewes court stated, "[t]he district court erred when it

FINDINGS AND RECOMMENDATION - 14

refused to consider the new evidence . . . *submitted* to the Appeals Council . . . ." Id. Thus, because the Appeals Council received plaintiff's submission and mentioned the evidence in the "What We Considered" section of its notice, Plaintiff argues Brewes dictates the Court must review the new evidence as part of the record as a whole.

In response, the Commissioner draws a distinction between the Appeals Council "looking at" new evidence versus "considering" new evidence. "[C]onsistent with the requirements of the relevant regulations, the Appeals Council returned this evidence to Plaintiff, rather than 'considering' it and incorporating it into the administrative record. Because the Appeals Council did not consider the medical evidence, it was not made part of the record." Def.'s Br. 10 (citing id.). For the reasons that follow, the Court agrees with the Commissioner's conclusion.

Despite any ambiguity in Brewes, the plain language of the relevant regulations provides adequate support for the Commissioner's position. As Brewes addresses in a footnote, the Appeals Council shall *consider* additional evidence "only where it related to the period on or before the date of the [ALJ] hearing decision. Id. at 1162 n.3 (quoting 20 C.F.R. § 404.970(b)). However, "[i]f you submit evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will explain why it did not *accept* the additional evidence . . . ." 20 C.F.R. § 404.976(b)(1) (emphasis added).[5] Therefore, when the Appeals Council finds that new evidence does not relate to the relevant adjudication period, the evidence is deemed immaterial. Accordingly, the Appeals Council does not "accept" the evidence into the

---

[5] The Court notes 20 C.F.R. § 404.976(b)(1) was amended, effective February 5, 2016, after Plaintiff filed her opening brief and before the Commissioner filed a response. Although the Commissioner quotes the previous version of the regulation, the Court opts instead to quote the current version, as the difference between the two is negligible as applied to the instant case. The Court further notes its recommendation would be the same under the previous version.

administrative record, and thus does not "consider" the evidence in reviewing the ALJ's decision. Id. This interpretation is further supported by another regulation:

> *The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.* The Appeals Council's decision, or the decision of the [ALJ] if the request for review is denied, is binding unless you or another party file an action in Federal district court . . . ."

20 C.F.R. § 404.981 (emphasis added). Thus, the Appeals Council may uphold the ALJ's decision two ways: (1) deny the request for review, or (2) accept the request for review, but determine nonetheless the ALJ's decision is supported by substantial evidence, and stating the rationale for the decision. Id. As such, § 404.981 dispels any ambiguity about the difference between not accepting a case for review, and accepting the case and considering whether the new evidence disturbs the ALJ's decision. Here, because the Appeals Council found Dr. Dean's report was not relevant to the time period and therefore immaterial, it declined to review the ALJ's decision, and therefore was not required to enter the report into the record or further consider it against the record as whole. Here, the Appeals Council also stated its reason for declining review, and thus satisfied all of its appellate duties under Brewes and "sentence four" of 42 U.S.C.  405(g). See, e.g., Knipe v. Colvin, available at 2015 WL 9480026, *5 (D.Or. December 29, 2015).

Plaintiff, in her Reply Brief, argues for the first time the sentence four remand is supported by precedent under Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228 (9th Cir. 2011), because "this court does have the authority to consider Dr. Dean's evaluation." Pl.'s Reply 4. The facts presented in Taylor, however, are distinguishable. In Taylor, not only did the Appeals Council not "review" or "consider" a post-decision submission of medical evidence, it appears the Appeals Council simply lost the pertinent evidence. Taylor, 659 F.3d at 1232-33. As

such, the Appeals Council did not deny review or consideration of the new evidence; rather, it was silent. Id. Uncontested by the Commissioner, the Taylor court concluded the wayward medical report should have at least been considered by the Appeals Council, and therefore remanded to the ALJ for appropriate evaluation and weighing of its contents. Id. at 1233. Taylor is further distinguishable because, unlike the instant case, the "new" medical opinion in Taylor expressly indicated it encompassed the relevant adjudicatory period, thus establishing temporal materiality. Id. at 1232. Accordingly, the Taylor court held that "[w]here the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." Id. at 1233. Here, in contrast, the question of whether the Appeals Council "was required" to consider the evidence is not unequivocal as the Commissioner denies it is relevant to the adjudicatory period. Def.'s Br. 10.

The Court further notes that the Taylor court followed Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993), wherein the Appeals Council purported to "decline[] to review" new evidence, despite the fact the Appeals Council actually "reviewed" the evidence insofar as the Council evaluated the evidence against the record as a whole, but decided it "did not provide a basis for changing the hearing decision." Ramirez, 8 F.3d at 1453. Thus, the Ramirez court concluded the Appeals Council "reviewed" the new evidence and (incorrectly) decided it was not probative of disability, but failed to *accept* the evidence into the record. Id. The Ramirez court further determined the evidence should have been made part of the record, and essentially unilaterally supplemented the record and remanded for immediate payment of benefits.

It is important to note, however, that neither in Ramirez nor in Taylor did the Commissioner contend the Appeals Council should not have *reviewed* the new evidence. Rather,

FINDINGS AND RECOMMENDATION - 17

both courts admonished the Appeals Council's failure to provide any reason for refusing to *accept* the reports into the record, so they could properly be considered. See Ramirez, 8 F.3d at 1453-54; Taylor, 659 F.3d at 1233.[6] In other words, *materiality* was not at issue in either case.

The legal rationale which links Brewes, Taylor, and Ramirez is, where there is no *dispute* about the materiality of incorrectly rejected evidence, it should be *accepted* into the record and *then* considered accordingly. Only then may a district court review the entire record, including the new evidence accepted therein, to determine whether the Appeals Council erroneously found the evidence, on its merits, does not alter the ALJ's ultimate decision. See Brewes, 682 F.3d at 1162 (" . . . regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, *so long as the evidence relates to the period* on or before the ALJ's decision.") (emphasis added). Here, in contrast, both the materiality *and* the probative value of the evidence is at issue, as the Commissioner maintains Dr. Dean's report does not relate to the adjudicatory period, and further, "adds nothing to the ALJ's analysis." See Def.'s Br. 10, 13. Thus, the instant case diverges from Brewes, Taylor, and Ramirez.

For these reasons, the Plaintiff's reliance on Taylor is unavailing. The Appeals Council provided a legitimate reason for declining to consider Dr. Dean's report. Tr. 2. Because the relevance of the evidence remains in dispute, and because the Court cannot review the decision of the Appeals Council, the Court is precluded from reviewing the unincorporated evidence for

---

[6] The Court is aware of a passage in Taylor which states: "if the Appeals Council rejected Dr. Thompson's medical opinion because it believed it to concern a time after Taylor's insurance expired, it was improper." Taylor, 659 F.3d at 1232. While the passage appears to support Plaintiff's argument, it is merely dicta as the issue was decided on other grounds, namely, the doctor's report was lost, and therefore it was neither denied review nor rejected upon review. Id. at 1233.

substantial evidence of disability under "sentence four" of 42 U.S.C. § 405(g). <u>Brewes</u>, 682 F.3d at 1161-62.

III. "<u>Sentence Six</u>" <u>Remand</u>

Plaintiff alternatively argues that "sentence six" of 42 U.S.C. § 405(g) dictates remand. Sentence six of 20 U.S.C. § 405(g) states,

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record . . . .

20 U.S.C. § 405(g). Thus, a sentence six remand rule has three prerequisites: (1) evidence must be new and not merely cumulative; (2) it must be material, and (3) good cause must be shown. <u>Id.</u> Assuming the requisites are met, the Court retains jurisdiction until the additional administrative proceedings are complete, and a new record and decision is filed with the Court. <u>See</u> <u>id.</u>

Plaintiff contends she has proffered new material evidence insofar as it bears "directly and substantially" on her disability determination. Pl.'s Br. 16 (quoting <u>Mayes v. Massanari</u>, 276 F.3d 452, 461-62 (9th Cir. 2001)). Further, plaintiff states she is able to show good cause, because the report in question "was ordered by DHS to determine whether plaintiff could work and participate in DHS programs . . . there is no indication that plaintiff had any knowledge of or control over" the scheduling of the evaluation. Pl.'s Br. 16.

The Commissioner disagrees on both points. The Commissioner first asserts Dr. Dean's report cannot cause the ALJ to reverse his decision because the report was not written during the

FINDINGS AND RECOMMENDATION - 19

relevant time period. Def.'s Br. 13. Next, the Commissioner asserts, without factual support, the "new report adds nothing to the ALJ's analysis . . . ." Id. Neither contention withstands scrutiny.

Despite the Court's finding that it cannot reverse the non-materiality finding of the Appeals Council, the Court is nonetheless unconvinced Dr. Dean's report is immaterial. Although it cannot reverse the Appeals Council, the Court is free to determine whether new evidence is material under "sentence six." Despite the Appeals Council findings and the Commissioner's arguments, an important detail in Ninth Circuit SSA jurisprudence is that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (citation omitted); Taylor, 659 F.3d at 1232-33 (finding "post-expiration" report by a treating medical source material because it specifically referred to the relevant adjudication period, during which the authoring physician treated the claimant on a number of occasions); Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) ("It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (citation omitted).

Of course, not every evaluation is completely relevant, as many are correctly accorded little weight, or found to be so far removed from the adjudication period that they are no longer probative. However, the salient point is severe impairments often persist for years, so medical evaluations completed within a reasonable amount of time after elapse of the adjudicatory period may well be the best, most accurate assessment of such an impairment.

The cognitive and psychological evaluation by Dr. Dean took place on December 7, 2012, less than a month after the ALJ's adverse decision was published. Tr. 30; Pl.'s Br., Ex. A, 2. The evaluation included an assessment of Plaintiff's socio-psychological history, describing, among other issues, evidence of anxiety from the time she was a teenager, and depression since

2010, both of which were found to be severe impairments at step two. Tr. 22. Dr. Dean's discussion of Plaintiff's psychological issues clearly evinces limitations prior to the date of the doctor's evaluation, the date the ALJ's decision was published, and before. See Pl.'s Br., Ex. A, 8-12. Thus, there can be little doubt the observations, findings, and conclusions set forth in the report of December 7, 2012 are relevant to the evaluation of Plaintiff's condition prior to November 9, 2012. Lester, 81 F.3d at 832. Accordingly, the Court finds the post-expiration date of the new evidence does not negate its materiality.[7]

The Court further finds Dr. Dean's evaluation is substantively material and probative of Plaintiff's disability, as it bears directly and substantially on the matters at issue. See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (defining materiality in this context). Dr. Dean administered a number of cognitive and psychological tests, including the Wechsler Adult Intelligence Scale ("WAIS-IV"), a neuropsychological assessment battery, "Trails A & B", and a

---

[7] The Commissioner argues, "circuit authority holds that new medical evidence following an adverse administrative decision denying benefits carries little, if any, weight." Def.'s Br. 13. The case the Commissioner cites in support of the assertion, Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989) does not, however, represent circuit authority holding medical evidence following an adverse decision "carries little, if any, weight." The Weetman court indicated the new evidence in that case was unpersuasive primarily because it was inconsistent with the physician's earlier notes and because the plaintiff had worked during the adjudication period. Id. The Court then stated the opinion was "all the less persuasive" because it was rendered after the adverse decision. Id. Weetman did not hold, or even infer, that new medical evidence, following an adverse decision generally carries "little, if any, weight." To the contrary, new evidence submitted after an adverse decision may be accorded significant weight, and whether the evidence was produced before or after a decision is rarely addressed; further, the Court is aware of no case where the issue alone was dispositive. The argument fails. See, e.g., Brewes, 682 F.3d at 1164-65 (remanding case for immediate payment of benefits based solely on "new" evidence, with no discussion of when the evidence was produced); Lingenfelter, 504 F.3d at 1030 n.2, 1041 (remanding case for immediate payment of benefits based in part on new evidence submitted two years after ALJ's decision); Ramirez, 8 F.3d at 1454-55 (remanding for immediate payment of benefits based on post-hearing evidence submitted to Appeals Council); Carlson v. Astrue, 682 F.Supp.2d 1156, 1161 (D.Or. Jan. 21, 2010) (explaining Weetman does not direct that post-decision evidence is entitled to "little, if any, weight."); but cf., Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (finding medical reports issued after an ALJ decision were, therefore, "less persuasive") (citing Weetman, 877 F.3d at 23).

Personality Assessment Inventory ("PAI"). The doctor also took an extensive history from Plaintiff, and reviewed records from Cascadia Behavioral Healthcare from 2010-12. Id., 2-4. Dr. Dean diagnosed Major Depression, Social Phobia, Generalized Anxiety Disorder, and Somatization Disorder, and assessed a GAF of 51. Id., 10.

Dr. Dean's report further included a "Mental Residual Function Capacity Report" worksheet, wherein she indicated Plaintiff was moderately limited in: maintaining attention and concentration for extended periods; performing activities within a schedule and maintaining regular attendance and punctuality; completing a normal workday/week without interruptions from psychologically-based symptoms and at a consistent pace; and interacting with the general public and responding appropriately to criticism from supervisors, among others. Id., 14. Plaintiff was assessed as markedly limited in the ability to work in coordination or proximity to others; and ability to travel to unfamiliar places or use public transit. Id. Dr. Dean also evaluated impairment severity, finding a mild to moderate limitation in restriction of activities of daily living; a moderate to marked limitation in social functioning; and a mild to moderate restriction in concentration, persistence, or pace. Id., 15. The doctor also assessed "four or more" episodes of decompensation. Id., 15-16. Finally, in a narrative summary, Dr. Dean opined Plaintiff's "ability to participate in employment at this time is compromised by her mental health symptoms . . . [s]he is not a good candidate for competitive employment at this time." Id., 12. In all, Dr. Dean's report sets out a broad and thorough analysis of Plaintiff's history of longstanding mental health issues, as well as a comprehensive assessment of her (then) current psychological status. Thus, the new evidence is substantively material.

The Court also finds Plaintiff has shown good cause for her failure to present the evidence earlier. As the report explains, Plaintiff was referred to Dr. Dean by the Oregon

FINDINGS AND RECOMMENDATION - 22

Department of Human Services ("DHS"), apparently for the purpose of evaluating her capacity to participate in an employment program. Pl.'s Br., Ex. A, 2. The DHS evaluation does not appear to have any relation to Plaintiff's SSA case. Further, there is no indication Plaintiff had any control over when the evaluation was scheduled, or when the corresponding report would be published. Thus, there is also no indication the evaluation could have been performed or the report produced prior to the ALJ's decision.

Therefore, the Court recommends Dr. Dean's psychological evaluation be considered by an ALJ in further proceedings under "sentence six" of 42 U.S.C. § 405(g).

## <u>Conclusion</u>

A judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the SSA for further proceedings under sentence six of 42 U.S.C. § 405(g). The judgment should require an ALJ to consider the psychological evaluation report of Dr. Dean which was proffered by Plaintiff to the Appeals Council. The report should be accepted into the administrative record. The ALJ should then convene a new hearing and reassess all of the material evidence based on the record as a whole.

//

//

//

//

//

//

//

//

FINDINGS AND RECOMMENDATION - 23

## **Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 6, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 18th day of May, 2016.


\_\_\_\_/s/ John Jelderks_____

John Jelderks

U.S. Magistrate Judge